**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS L. ZAMMER** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **HERMAN MILLER, INC.** | : | **No. 10-922** |
| Defendant. | : | |

**MEMORANDUM**

Schiller, J.                                                                October 18, 2011

Nicholas Zammer entered into a contract with his long-term employer Herman Miller, Inc. ("HMI"), which would allow Zammer as a furniture dealer an opportunity to purchase his furniture dealership over a five-year period, if he achieved certain performance goals. HMI terminated Zammer prior to the completion of the five-year period, and Zammer claims that his termination was in breach of their contract. Zammer initiated the instant action against HMI for breach of contract, fraud, promissory estoppel, and for declaratory relief that the arbitration provision and the non-compete provision were unenforceable . This court granted Defendant's Motion to Stay and Compel Arbitration on June 22, 2010. On August 23, 2011, an arbitrator found no cause of action as to the breach of contract, fraud, and promissory estoppel claims. The arbitrator also ruled that the non-compete provision was unenforceable. HMI now seeks to confirm the arbitration award. In response, Zammer has filed a cross-motion to set aside the arbitration award. For the reasons that follow, the Court will confirm the arbitrator's award.

I.        **BACKGROUND**

Zammer began working as a salesman for HMI in 1986. He was promoted in 1994 and

relocated to Toronto to manage HMI's largest global account. Zammer left HMI in 2001 but returned in 2003 as President of Herman Miller-OP, Spectrum, LLP ("Spectrum"), an authorized HMI contract furniture dealer with a showroom in King of Prussia, Pennsylvania. In 2003, HMI launched the Earn In Program ("EIP"), which allowed dealers running HMI showrooms to purchase the dealership at a preferential price if the dealers met certain performance requirements. In 2006, HMI offered Zammer, as a dealer, the opportunity to participate in EIP, which Zammer accepted through the execution of a Letter of Intent and deposit of $75,132 toward the purchase price of the Spectrum dealership.

Zammer and HMI also entered into a Compensation Agreement, which provided that HMI could terminate the agreement for cause if Zammer failed to meet certain performance goals. If the agreement was terminated for cause, HMI would refund only half of the "bonus funds" that Zammer had on deposit with HMI. The Compensation Agreement provided:

> 10. Cause of Dealer Principal Discharge. The discharge of Dealer Principal by HMI for any one of the following events will constitute a termination for cause under Section 6(d) and will entitle HMI to pay Dealer Principal a one-half (½) payment of the bonus funds on deposit with HMI:
>
> > a. Dealer for two consecutive years fails either to meet the sales goals assigned by HMI or to achieve 3 percent (3%) adjusted income. . . .

(Pl.'s Opp'n to Mot. to Confirm Arb. Award and Mem. in Supp. of Cross-Mot. to Set Aside Arb. Award ["Pl.'s Cross-Mot."] Ex. J-5 [Compensation Agreement] ¶ 10.) Zammer alleges that HMI made representations and assurances to Zammer that orally modified the Compensation Agreement as well as the parties' obligations and performance under the EIP. However, HMI terminated Zammer in 2009 based on his failure to achieve three percent adjusted operating income for two consecutive years and offered to return half of his bonuses which were held in escrow with HMI.

2

(Am. Compl. Ex. C. [Termination Letter].) Zammer contends that HMI pressured him to increase market share, often at the expense of the required performance goals, such as by offering below-cost customer pricing and by rejecting his plan to reduce operating expenses. Zammer argues that HMI breached its contract and its commitments to him by prematurely terminating the Compensation Agreement.

The Compensation Agreement also included a non-compete provision, which precluded Zammer from competing with HMI for two years after his termination. The non-compete provision stated:

> 12. Competitive Business. . . .
>
> > b. Dealer Principal shall not, directly or indirectly in the Territory during the Noncompetition Period [two years after Dealer Principal ceases being employed by HMI], engage, participate, invest, or assist any Competitive Business as an owner, part-owner, stockholder, partner, director, officer, trustee, employee, agent, consultant, or in any other capacity.
> >
> > c. In addition, Dealer Principal will not, for two (2) years after termination of this Agreement, recruit or solicit, or attempt to recruit of [sic] solicit, any of HMI's employees for employment in any Competitive Business. . . .
> >
> > d. Dealer principal agrees that any breach of the restriction of 12(b) will cause irreparable harm to HMI and will entitle HMI to an injunction.

(Compensation Agreement ¶ 12.) Zammer alleges that due to the non-compete provision, he has been unable to secure employment. (Pl.'s Cross-Mot. at 23.) In nearly two years of unemployment, Zammer alleges that his lost salary, plus benefits, amount to $415,416.00. (*Id.*)

On March 3, 2010, Zammer sued HMI for breach of contract, promissory estoppel, and fraud. He also sought a declaratory judgment that the arbitration provision in the Compensation Agreement was unilaterally revocable and that the non-compete provision in the Compensation Agreement was

unreasonable and therefore unenforceable.

On April 12, 2010, HMI filed a motion to stay and to compel arbitration, as well as a motion to dismiss Zammer's claims for fraud and promissory estoppel. This Court granted the motion to stay and compel arbitration on June 22, 2010, holding that the arbitration clause in the Compensation Agreement was enforceable, not revocable, federal substantive arbitration law applied, and all of Zammer's claims fell within the scope of the arbitration agreement. On July 7, 2010, Zammer demanded arbitration, asserting four claims: (1) breach of contract, (2) fraud, (3) promissory estoppel, and (4) declaratory relief that the non-compete provision is unreasonable and unenforceable under the Michigan Antitrust Reform Act. (Def.'s Mot. to Confirm Arb. Award ["Def's Mot."] Ex. D [Demand for Arb.].) The arbitrator issued an award on August 23, 2011, finding no cause of action on Zammer's breach of contract, fraud, and promissory estoppel claims, and granting declaratory relief on the fourth claim, stating, "the non-compete provision is unenforceable effective immediately." (Def.'s Mot. Ex. A [Award of Arbitrator].)

## II.   STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a strong federal policy in favor of arbitration. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010).

A district court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed by the FAA. 9 U.S.C. § 9. The FAA provides that a district court may vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) there was

evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrator exceeded his or her powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Id*. § 10. The party seeking vacatur bears the burden of proof. *See Lebeau v. Oppenheimer & Co.*, Civ. A. No. 05-6779, 2006 WL 1737379, at *2 (E.D. Pa. June 23, 2006).

District courts should vacate arbitration awards only in "exceedingly narrow" circumstances and must apply an "extremely deferential" standard of review. *Rita's Water Ice Franchise Co. v. Simply Ices, Inc.*, Civ. A. No. 08-2011, 2008 U.S. Dist. LEXIS 77963, at *6 (E.D. Pa. Oct. 3, 2008) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). There is a "strong presumption" in favor of the arbitration award. *U.S. Steel Mining Co. v. Wilson Downhole Servs.*, Civ. A. No. 00-1758, 2006 U.S. Dist. LEXIS 72737, at *2 (W.D. Pa. Oct. 5, 2006) (quoting *Mut. Fire, Marine & Inland Reins. Co. v. Norad Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989)).

## III.   DISCUSSION

Zammer argues for vacatur of the arbitrator's award based on the arbitrator's error in applying the law. Zammer asserts that the overwhelming evidence established that HMI breached its contract, that HMI's conduct was fraudulent, that HMI is estopped from denying its promises to Zammer, and that the determination that the non-compete provision was unenforceable mandates an award of damages.

Zammer's claims are merely attempts to argue that the arbitrator's decisions were legally

5

incorrect. He contends that the award of the arbitrator is a manifest mistake, grossly unfair, and a serious error of law. The Third Circuit has in the past recognized an additional judicially created reason for vacatur for awards made in "manifest disregard of the law." *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 291 n.2 (3d Cir. 2001). Subsequently, however, the Supreme Court held that the FAA provides the exclusive grounds for vacatur and modification and parties may not contractually supplement the statutory grounds for modification and vacatur to include erroneous legal conclusions and factual findings not supported by substantial evidence. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). ("[T]he text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive."). The Third Circuit has yet to decide whether "manifest disregard of the law" remains a valid basis for vacatur in the wake of *Hall Street*. *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 177 (3d Cir. 2010).

Zammer contends that Michigan law should apply to the "standard of review to set aside an arbitration award." (Pl.'s Cross-Mot. at 13 n.17.) He argues that based on the choice-of-law provision, Michigan law must apply when it does not contradict the FAA. (Pl.'s Cross-Mot. at 13 n.7.) Under Michigan law, Zammer argues, vacatur of an arbitrator's award is permissible when errors of law are so "egregious, may so materially affect the outcome of the arbitration, may so plainly demonstrate a disregard of principles fundamental to a fair resolution of the disputes, or may so unequivocally generate a legally unsustainable result that they cannot be said to be within the parties' agreement to arbitrate or the arbitrator's authority." (*Id.* at 16) (quoting *Detroit Auto. Inter-Ins. Exch. v. Gavin*, 331 N.W.2d 418, 430 (Mich. 1982)). The Michigan standard of review requires that "in order to vacate an arbitration award, any error of law must be 'so substantial that, but for the error, the award would have been substantially different.'" *Washington v. Washington*, 770 N.W.2d

6

908, 913 (Mich. Ct. App. 2009) (quoting *Collins v. Blue Cross Blue Shield of Mich.*, 579 N.W.2d 435 (Mich. Ct. App.1998)).

However, this Court need not resolve the issue of whether "manifest disregard of the law" remains as a basis to overturn an arbitrator's award in the Third Circuit following *Hall Street* or whether Michigan law applies here because Zammer fails to establish either manifest disregard of the law by the arbitrator or an egregious error of law. To demonstrate a manifest disregard of the law, Zammer must show that the arbitrator knew of the relevant legal principle, appreciated its control of the outcome of the disputed issue but nonetheless "willfully flouted the governing law by refusing to apply it." *Paul Green Sch.*, 389 F. App'x at 177. The manifest disregard of the law standard does not permit "review for mere errors of interpretation, no matter how clear the error may be. For there to be 'manifest disregard of the law' the arbitrators must have been presented with controlling precedents which they refused to apply." *Detroit Auto. Inter-Ins. Exch.*, 331 N.W.2d at 434. Furthermore, under Michigan's standard, "any error of law must be discernible on the face of the award itself [meaning] that only a legal error that is evident without scrutiny of intermediate mental indicia, will suffice to overturn an arbitration award. Courts will not engage in a review of an arbitrator's mental path leading to the award." *Washington*, 770 N.W.2d at 913 (internal quotations and citations omitted).

Zammer fails to make a showing under either standard and instead seeks to relitigate this case through his prolix cross-motion to set aside the arbitration award with its accompanying 1,034 pages of transcript and 1,638 pages of exhibits, among numerous other attachments. Zammer has failed to establish that the arbitrator erred in applying the law, and the Court need not scour the arbitral record to strengthen his argument. *See Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F. Supp. 2d 691,

7

692 (E.D. Pa. 2009) ("Because the burden is on the parties to point us to relevant facts in the voluminous record, we have not embarked on an unguided tour of the parties' documents but instead focus on the facts that they have brought to our attention in their motions, responses, and briefs.").

As demonstrated through the briefing during the arbitration, as well as in the arbitral transcript, both parties fully advocated their legal arguments. Zammer raised the issue of whether HMI breached its contract with him and whether HMI's oral promises modified that contract. (Def.'s Opp'n to Pl.'s Cross-Mot. ["Def.'s Resp."] Ex. 5 [Zammer's Post-Hr'g Br.] at 6-8.) Zammer also argued to the arbitrator that HMI's conduct was fraudulent and that HMI is estopped from denying its promises to him. (*Id.* at 8-9.) Zammer asserted actual damages that he suffered and argued for exemplary damages as a result of his claims against HMI. (*Id.* at 9-10; Pl.'s Cross-Mot. Ex. J-26 [Expert Report of Harris Devor, C.P.A.].) Finally, Zammer asserted his claim for declaratory relief on the non-compete provision, arguing that the provision was "egregious." (Zammer's Post-Hr'g Br. at 4; Compensation Agreement ¶ 12.)

The issues raised by Zammer in his cross-motion to set aside the arbitration award were raised with the arbitrator, who clearly rejected the arguments in his award. The wisdom of those decisions is not the issue before this Court, which does not hear appeals of arbitration decisions. *Local 863 Int'l Bhd.*, 773 F.2d 530, 534 (3d Cir. 1985) ("The court may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision."). The only argument advanced by Zammer is that the arbitrator's award was "so egregious, so demonstrated a complete disregard of principles to a fair resolution of this dispute and was based on an error so material and substantial, that the award should have been substantially otherwise." (Pl.'s Cross-Mot. at 17.) Mere legal error is not a basis to vacate an arbitration award. *See Fluke v. Cashcall*, Civ. A.

No. 08-5776, __ F. Supp. 2d __, 2011 WL 2117547, at *3 (E.D. Pa. May 26, 2011) ("Even an arbitrator's incorrect legal conclusion is entitled to deference.") (citing *Local 863 Int'l Bhd.*, 773 F.2d at 533). Further, "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764 (1983) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).

Finally, Zammer argues that the arbitrator's failure to award damages when finding that the non-compete provision is unenforceable is "patently erroneous on its face, mandating that the award be set aside." (Pl.'s Cross-Mot. at 24.) Zammer's demand for arbitration, however, requests declaratory relief on the non-compete provision. (Demand for Arbitration at 17.) His request for declaratory relief in his demand states that "[a]n actual and justiciable controversy has arisen and presently exists as to whether the Non-Compete Provision contained in the parties' Compensation Agreement is unreasonable and unenforceable under the [state law]." (*Id.*) The Demand then asserts that claimant "is entitled to a declaration that the Non-Compete Provision is unreasonable as to its [restrictions on] duration, geographical area and the type of employment or line of business" and that the claimant "is entitled to a judicial declaration that the wholesale prohibition on all competition is in restraint of trade." (*Id.* at 18.) Zammer sought—and was awarded—declaratory relief with regard to the non-compete clause. Now he argues that the arbitrator's failure to award damages for injuries flowing from the unenforceable non-compete provisions necessitate vacatur of the award. Declaratory relief is an equitable remedy under Michigan law. *See Coffee-Rich, Inc. v. Mich. Dep't of Agric.*, 135 N.W.2d 594, 595 (Mich. Ct. App. 1965). Furthermore, Michigan courts emphasize

9

that "declaratory relief is a remedy (equitable in nature, because it is not a damages remedy) not a claim." *Mettler Walloon, L.L.C. v. Melrose Tp.*, 761 N.W.2d 293, 317 (Mich. Ct. App. 2008) (citations omitted). Therefore, the arbitrator's finding that the non-compete provision was unenforceable does not mandate an award of damages.

IV.     **CONCLUSION**

Zammer has failed to demonstrate that he is entitled to vacatur of the arbitration award, and the Court may not substitute its judgment for that of the arbitrator. Zammer's cross-motion to set aside the arbitration award is therefore denied, and HMI's motion to confirm the arbitration award is granted. An Order consistent with this Memorandum will be docketed separately.